(103 So. 165)

**HOME INS. CO. v. COBBS, City Treasurer.
(3 Div. 475.)**

(Court of Appeals of Alabama. Feb. 17, 1925.)

**1. Statutes ☞259—Parties, for whose benefit law enacted, may waive it.**

Parties, for whose benefit a law is enacted, may waive such benefit.

**2. Officers ☞110—Legislative act may not be nullified by neglect of official to perform duty.**

A positive act of Legislature may not be nullified or suspended by neglect of an official to perform a duty enjoined on him by law.

**3. Statutes ☞259—That an act is to be effective on some contingency may arise by implication.**

That an act is to become effective on happening of some designated event or contingency may arise by implication as well as by express words.

**4. Municipal corporations ☞200—Election of board of trustees by fire department condition precedent to collection of tax for fireman's pension fund.**

Acts 1915, p. 898, as amended by Acts 1919, p. 111, authorizing a tax on insurance companies for benefit of firemen's pension fund, and repealed as to certain cities by Acts 1923, p. 765, is intended to provide merely machinery for creation of such organization, and hence, until election and organization of board of trus-

tees by a fire department seeking to take advantage of the act, insurance companies are not required to pay, nor firemen to contribute, nor city to make deductions from their wages.

**5. Taxation ☞42(1)—Tax on insurance companies for fireman's pension fund discriminatory but for benefits.**

Acts 1915, p. 898, as amended by Acts 1919, p. 111, authorizing a tax on insurance companies for benefit of firemen's pension fund, but for benefits received would be an unreasonable and unwarranted discrimination against insurance companies.

**6. Charities ☞1—Charitable trust not created by compulsory payments.**

Charitable trusts are not created by compulsory payments, but usually arise voluntarily.

**7. Municipal corporations ☞200 — Tax for firemen's pension fund compensation for services.**

Tax authorized by Acts 1915, p. 898, as amended by Acts 1919, p. 111, for benefit of firemen's pension fund of cities specified, is not a gratuity, but compensation for services rendered.

**8. Statutes ☞241(1)—Penal statutes must be strictly construed.**

Penal statutes must be strictly construed.

**9. Municipal corporations ☞200—Suit to recover tax for firemen's pension fund improperly brought by city treasurer.**

Suit to recover tax authorized by Acts 1915, p. 898, as amended by Acts 1919, p. 111, for benefit of firemen's pension fund of various cities, could not be maintained by a city treasurer; he being but a mere custodian of fund, in view of section 6, and section 7 conferring on "board of trustees" exclusive control thereof.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Action to recover tax by J. Lewis Cobbs, as Treasurer of the City of Montgomery, suing for the use and benefit of the Board of Trustees of the Firemen's Pension and Relief Fund, against the Home Insurance Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Steiner, Crum & Weil, of Montgomery, for appellant.

The act did not become operative until the organization of the board of trustees. Lane v. Kolb, 92 Ala. 641, 9 So. 873; Toole v. State, 88 Ala. 158, 7 So. 42; Savage v. Walsh, 26 Ala. 619; 2 Sutherland on Stat. Const. (2d Ed.) § 632; 26 Ency. of Law (2d Ed.) 691; Gallup v. Smith, 59 Conn. 354, 22 A. 334, 12 L. R. A. 353. Crowder v. Fletcher, 80 Ala. 219. The suit is improperly brought by the treasurer. Code 1907, § 2490. Penal statutes must be strictly construed. Chandler v. Hanna, 73 Ala. 390; A. G. S. v. Ala. Pub. Service Comm., 210 Ala. 153, 97 So. 226; Crowder v. Fletcher, supra; Holmes v. Lam-

breth, 163 Ala. 460, 50 So. 140; Crawford v. State, Minor, 143.

Ludlow Elmore, of Montgomery, for appellee.

This suit is brought properly by the city treasurer. Yerby v. Sexton, 48 Ala. 311; Hirschfelder v. Mitchell, 54 Ala. 419; Tilley v. Harrison, 91 Ala. 295, 8 So. 802; Bibb v. Hall, 101 Ala. 79, 14 So. 98; Rice v. Rice, 106 Ala. 636, 17 So. 628. A charitable trust will not be permitted to fail for want of a trustee. 6 Cyc. 935; Williams v. Pearson, 38 Ala. 299; Perry on Trusts (6th Ed.) § 731; Werlein v. N. O., 177 U. S. 390, 20 S. Ct. 682, 44 L. Ed. 817; Fellows v. Miner, 119 Mass. 541; Sanderson v. White, 18 Pick. (Mass.) 328; Odell v. Odell, 10 Allen (Mass.) 1; Baker v. Clark Inst. 110 Mass. 88.

BRICKEN, P. J. This action was instituted by J. Lewis Cobbs, as treasurer of the city of Montgomery, for the use of the "board of trustees of the firemen's pension and relief fund," to recover of appellant insurance company a tax alleged to be due on the 1st day of February, 1920, under the provisions of an act of the Legislature approved February 17, 1919 (Acts 1919, p. 111), amendatory of an act approved September 28, 1915 (Acts 1915, p. 898).

The case was here on former appeal when the constitutionality of the act was passed upon (Cobbs, Treasurer, v. Home Insurance Co., 18 Ala. App. 206, 91 So. 627), and the cause was remanded, but the questions now presented were not considered on that appeal. On the subsequent trial of the cause, the court, trying the case without a jury, gave judgment for the plaintiff, and the defendant appeals.

Appellant by appropriate pleadings insisted chiefly, and renews the insistence here, that the action cannot be maintained until there is an election of a board of trustees by the fire department of the city of Montgomery, pursuant to the provisions of the act, and that no such election was had until long after the bringing of the suit. The insistence, briefly, is that, while the act of 1919 for all the purposes intended became effective upon the approval of the Governor, it did not require the payment of the tax in question in any of the cities of the designated class until and unless the fire department in such city, and for whose benefit the law was enacted, elected to accept its benefits by bringing into existence the organization provided for.

It is conceded by the pleadings, and shown in evidence without dispute, that no board of trustees of the firemen's pension and relief fund for the city of Montgomery was elected and no steps taken to perfect or create any organization under the act for the reception, administration, or disbursement of the fund until in July, 1923, after the bringing of this suit.

In the determination of this question we must, of course, look to the act in its entirety, having clearly in mind the objects and purposes which the Legislature sought to accomplish. The original act was applicable only to cities having a population of 100,000 or more, but, by the amendatory act, the provisions of the original act and certain new provisions, not necessary here to be mentioned, were made applicable to all cities having a population, according to the last or any future federal census, of 10,000.

It was the expressed purpose of the Legislature to provide a method for raising a fund for the use and benefit of the fire department in the designated cities, and to provide the necessary machinery for the acquisition, administration, and distribution of that fund.

Section 1 of the act as amended provides, that—

"There is hereby created in connection with the regularly organized and paid fire department of such cities a 'board of trustees of the firemen's pension and relief fund,' by which name the said board shall be known and called, to be composed of the persons hereinafter named and to be selected as hereinafter provided and directed; and in all such cities, there is hereby created a firemen's pension and relief fund, for the benefit of the persons hereinafter named to be derived and raised in the manner hereinafter provided."

Section 3 provides that, within 10 days after the act takes effect, the chief or other head fireman shall designate a day for holding the first election of trustees, three in number, and, within the period designated, fix a time for holding a convention for the nomination of the trustees to be elected, and then, in great detail, directs the manner in which the delegates shall be elected and the convention and election conducted; while section 4 provides for the annual election of the trustees and their tenure of office.

Section 7 provides:

"That the said board of trustees of the firemen's pension and relief fund is hereby declared to be the trustee of said fireman's pension and relief fund, and shall have the exclusive management, and control thereof, and all matters legitimately connected therewith; and said board shall have power to adopt and enforce such rules and regulations as may be necessary to enable it to effectively and properly carry into execution the purpose for which it was organized, and to enable it to properly manage and conduct the business and affairs entrusted to it. * * * The said board shall hear and decide all applications for pensions or relief under this act, and its decisions on such applications shall be final and conclusive, and not subject to review or reversal, except by the said board."

Section 8 provides for the method of raising the fund, as by donations, contributions

by the city, compulsory deductions from the firemen's salaries, and by the tax on fire insurance companies doing business in such city, and imposes a penalty of $1,000 on every such insurance company failing to pay, to be recovered by suit brought in the name of said board of trustees.

Section 30 requires each fire insurance company doing business in such city to file with the said board of trustees annually a "sworn statement or report in writing," showing the gross amount of premiums received, etc., on failure to do which an additional penalty of $1,000 is imposed.

While the first section of the act recites "there is hereby created" a board of trustees, etc., it will be observed that the same sentence continues with the significant language, "to be composed of the persons hereinafter named and to be selected as hereinafter provided and directed," indicating very clearly, it would seem, that the Legislature in the use of the words first quoted necessarily contemplated and presupposed that the firemen would elect to accept the benefits of the act and perfect the organization by the election of the requisite number of trustees to constitute the board in accordance with its provisions. It is evident that the Legislature did not intend to force the firemen to accept the benefits of the act, but, on the contrary, to leave it to their will or option. This would seem to follow from the very requirement that an election be held by them preliminary to the organization. True, the mayor or executive head of the city and the chief of the fire department are made ex officio members of the board, but it would not be contended that they, either individually or as ex officio members of the board, could perform any of the duties and exercise any of the powers so specifically delegated to the board by section 7 of the act. It is the board of trustees therein provided for which "is hereby declared" to be the trustees of said firemen's pension and relief fund, and shall have the exclusive management and control thereof, and of all matters legitimately connected therewith, and said board shall have the power to adopt and enforce such rules and regulations as may be necessary to effectively and properly carry into execution the purposes for which it was organized and to enable it to properly manage and conduct the business and affairs intrusted to it, and the decision of such board is final and conclusive, and not subject to review or reversal except "by the board." These powers are executive, judicial, and legislative, and cannot be exercised by the mayor and the chief of the fire department, or by any tribunal other than that prescribed by law. The treasurer of the city is made the custodian of the fund, but he exercises no power and discharges no duty except to perfunctorily receive the funds, and disburse them upon the order of the board of trustees.

The board was by the act indeed presently created, but created in name only; manifestly it had not life or vitality and was wholly incapable of functioning until the personnel, who the Legislature expressly provided should constitute the board, is elected and who alone could have and exercise the powers and perform the duties prescribed. If the mayor and chief of the fire department had not been mentioned as ex officio members of the board, what life would it have, or who would have authority to act? The act gave the ex officio members of the board no authority whatever.

The provision in section 30 of the act that each fire insurance company doing business in such city shall annually file with the said "board of trustees" a sworn statement or report of the gross premiums received by each such company in such city is presumably for the purpose of furnishing a basis upon which to determine the amount of the tax to be paid. The board of trustees there and throughout the act mentioned is the board to be composed of the trustees, whose election is provided for in the act, and of which the mayor and the chief of the fire department are ex officio members. How could the requirement of this section be met before any such trustees came into existence, and who would have authority to receive such "statement and report"? And so it is provided that the penalty in this section prescribed may be recovered "by suit brought in the name of said board of trustees." It would not be contended that such suit could be maintained when no trustees had been elected. Who would have authority to authorize and conduct such suit, and pay for or contract for costs and expenses incident? "When a statute confers a power, privilege, or immunity, the formalities or conditions which it prescribes for its acquisition are imperative, in the sense that nonobservance of any of them is fatal to the benefits sought." 26 Enc. L. (2d Ed.) § 632; Crowder v. Fletcher, 80 Ala. 219.

[1] Turning to a further consideration of the purpose of the act, as has already been stated, we cannot believe that the Legislature intended that the acceptance of the benefits of the act by the fire department in the cities dealt with should be compulsory. It would indeed require a strained construction to so hold. Parties for whose benefit a law is enacted may waive those benefits. Savage v. Walshe, 26 Ala. 619. And their will and desire cannot be more strongly manifested than by inaction, when affirmative action is required. The firemen themselves are required, when the board of trustees provided for is organized, to contribute to the fund. They may not have desired to do this, and evidently did not desire to do so here, since no steps were taken by them and no

indication that they desired to avail themselves of the benefits of the act for more than four years after its enactment. They may have deemed such organization wholly impracticable. The fund to be raised in some of the cities might, in the opinion of the fire department in such cities, be deemed wholly inadequate to be of practical benefit, and this suggestion finds material support in the fact that the Legislature of 1923 expressly repealed the law as to all cities having a population of less than 40,000 (Acts 1923, p. 765). These were matters which the fire department had the right to determine for themselves.

Suppose an election is held and the firemen refuse to vote, or they expressly decline to elect the trustees, would it be contended that they were nevertheless bound to accept the benefits of the act? If then no election is held and no board organized in the manner prescribed by the act, it could not be said with any degree of conviction that it was nevertheless the duty of the insurance companies to continue paying, ad infinitum perhaps, when not one dollar of the fund would ever be disbursed, and no fireman or his dependent would be benefited thereby and when the very purpose of the act must therefore necessarily fail. All disbursements, as we have seen, are expressly delegated to the discretion of the board of trustees, and that power can be exercised by no one else.

[2, 3] A positive act of the Legislature may not be nullified or suspended by the neglect of an official to perform a duty enjoined upon him by law, but it is not uncommon for an act, complete in itself, to be made operative or effective, or its benefits bestowed upon the happening of some designated event or contingency, as, for instance, local option statutes, statutes providing for the commission form of government and the like, and this may arise by implication as well as by express words. If an election is desired, and the officer whose duty it is to call the election fails to discharge that duty, there is ample redress. Action may be speedily compelled by any party in interest, and the act is in no wise rendered impotent by his failure or refusal voluntarily to act.

[4] We cannot escape the conclusion that the act in question was intended to provide merely the machinery which might, at the option or election of the members of the fire department in the various cities classified, be put in motion, to the end that the organization therein authorized might be perfected, and then receive the benefits of its provisions, and then, but not until then, was there any duty on the part of the insurance companies to pay, any more than there was on the part of the firemen to contribute, or of the city to make the deduction from their wages.

[5] The argument of counsel for appellee that the disposition of the fund, or the fact that it may lie idle, is a matter of no consequence to appellant, and that whether or not appellant ever receives any benefit in consequence of the payment is immaterial, and that it was the duty of appellant to continue to pay or suffer the consequences, cannot prevail. The fundamental principle upon which the constitutionality of the act is upheld is that the insurance companies, as insurers against fire risks and upon whom the tax is levied, are presumed to be the recipients, directly or indirectly, of a benefit by raising the standard and promoting the efficiency of the fire department, and thereby decreasing risks. This is the underlying principle in the opinion of this court on the former appeal, and in the very elaborate opinion by Chief Justice Brickell construing a similar statute in Phœnix Assurance Co. v. Montgomery Fire Department, 117 Ala. 631, 23 So. 843, 42 L. R. A. 468. To require the tax to be paid only by insurance companies would, we apprehend, but for the benefit received, be an unreasonable and unwarranted discrimination.

[6, 7] The suggestion of counsel for appellee that the statute created a "charitable trust," and that such trust is never allowed to fail for want of a trustee, has no application here. Charitable trusts are not created by compulsory payments, but usually arise voluntarily, and the rule that a trust never fails for lack of a trustee is because the chancery court at all times has power to create or replace the trustee, but the chancery court has no power to appoint a trustee to administer the fund here, that power having been expressly delegated to another tribunal. But the opinion of this court on the former appeal disposed of this question, when it said the tax was not a gratuity, as appellee there contended, but was as compensation for services rendered.

[8, 9] From a careful review of the act, its object and purpose, and mindful of the rule that penal statutes must be strictly construed—and the act here is highly penal—we are clearly of the opinion and are constrained to hold that the election of the trustees, and an organization of the board in the manner prescribed by the act, was a condition precedent to the right of recovery. Moreover, this suit is improperly brought and cannot be maintained by Cobbs as treasurer. The statute (Acts 1915, p. 901, § 6) provides that the treasurer is the mere custodian of the fund. Section 7 of said act, supra, confers upon the "board of trustees" the exclusive management and control of the fund provided for in said act.

The judgment of the trial court is reversed, and one will be here entered in favor of appellant.

Reversed and rendered.

RICE, J., concurs in the above opinion.

SAMFORD, J. (concurring in conclusion). While I concur in the conclusion of BRICK-EN, P. J., that the judgment must be reversed, I am not in accord with the reasons or the conclusions of law as written by him in his opinion.

I am of the opinion that the act of 1915, p. 898 et seq., as amended by Acts 1919, p. 111 et seq., is a mandatory act fixing the status of all paid firemen within the municipalities therein enumerated. This is to be gathered from the act itself. For instance in section 1 we find this language:

"There is hereby created in connection with the regularly organized fire department of such cities a 'board of trustees,' " etc.

Section 2 provides of whom the board shall consist. Section 3 provides how the board *shall* be selected and sets and fixes a day and time for the selection and fixes the terms of office. Succeeding sections proceed with mandatory provisions for organization. Section 8 uses the word *may*, as to donations from outside sources and appropriations from the municipality. But, as to subdivisions B and C, the provisions are again mandatory:

"One dollar per month shall be deducted from the pay roll of such fire department for each member thereof" and "each fire insurance company doing business in such city shall, *within thirty days after this act takes effect*, and annually thereafter * * * pay into said fireman's pension fund," etc.

Section 31:

"This act shall take effect from and after its approval by the Governor."

The original act was approved September 28, 1915, and the amended act (which applies to this defendant), February 17, 1919. There is nowhere, either in the original act or in the amended act, any clause or provision which delays its operation or permits the fire department of any city within its terms to exercise such option as would suspend the act or relieve obligations therein demanded.

I said in Cobbs, Treas., v. Home Ins. Co., 18 Ala. App. 206, 91 So. 627:

"The creation of the fund and the machinery for carrying out the provisions thereof is governmental."

To support this conclusion I there cited authority. Being governmental and being designed, as was elsewhere stated in the same case, for the benefit of the public generally in the communities served, the terms of the act could not be nullified or suspended by inaction on the part of the parties upon whom the duties of organization and administration were enjoined. It was the duty of the several fire departments to have deducted $1 each month from the firemen's salaries and to have paid this money to the city treasurer. It was likewise the duty of the insurance company to have paid the amount provided to the treasurer, and such payment would have been a discharge of its obligation. The fact that others charged with certain duties had failed or even refused to perform them is no excuse for a failure on the part of this defendant, nor can the firemen themselves by inaction nullify the plain terms of the act. Whether the act creates a benefit to the individual fireman, which is to his financial advantage, is not to be considered by us in construing the law. The benefit is to the public and this question was determined by the Legislature when it enacted the law. Cobb, etc., v. Home Ins. Co., supra.

The case of Lane v. Kolb, 92 Ala. 641, 9 So. 873, has no application here. In that case the operation of the law was in effect postponed until the next general election. In the instant case the law becomes effective upon its approval by the Governor. Nor is the doctrine of a charitable trust applicable to the present case. The decision in the former appeal discussed and disposed of this latter question. The object of the act under consideration being to promote great public interest, it cannot be defeated or its execution legally postponed by inaction on the part of those charged with the duty of carrying its mandates into effect. Griffith v. N. Y. Life Ins. Co., 101 Cal. 627, 36 P. 113, 40 Am. St. Rep. 96.

I am, however, equally clear to the conclusion that Cobbs as treasurer cannot maintain this suit. Under the terms of the act (section 6, Acts 1915, p. 901) the treasurer is made the bare custodian of the fund, and, by the terms of section 7 of said act, the "board of trustees" is given the exclusive management and control of the fund provided for in said act. See, also, sections 11, 12, and 13, Acts 1915, p. 903. It also seems clear to me, though not necessary to a decision on this appeal, that the "board of trustees of the firemen's pension and relief fund" is an agency of the municipality charged with the duty of administering the fund provided and in its name should all suits be maintained for the benefit of the fund, and no penalties can be enforced for noncompliance with the terms of the act prior to the organization of the board.

The foregoing are my views of the law of this case and necessitate a concurrence in the conclusion to a reversal of the judgment.