198 So. 716

**CITY OF BIRMINGHAM v. HOME INS. CO.**

**6 Div. 688.**

Supreme Court of Alabama.

June 29, 1940.

Rehearing Granted Oct. 17, 1940.

John S. Foster, of Birmingham, for petitioner.

Coleman, Spain, Stewart & Davies, of Birmingham, opposed.

Thos. S. Lawson, Atty. Gen., and John W. Lapsley, Asst. Atty. Gen., amici curiæ on behalf of the State.

THOMAS, Justice.

The decision on first appeal did not decide the constitutionality of the proviso to Schedule 160.17, § 348, p. 555 of the General Revenue Act of 1935 (Gen.Acts 1935). Home Insurance Co. v. City of Birmingham, 28 Ala.App. 143, 180 So. 781; Id., 236 Ala. 41, 180 So. 783. That question is now presented. That proviso is: "Provided that no license or privilege tax, or other charge for the privilege of doing business shall be imposed by any municipal corporation on any fire insurance company writing industrial insurance."

Of the said proviso the Court of Appeals observed: "Of this last quoted sentence appellant's counsel say, here: 'It is agreed that if the above quoted sentence is unconstitutional or void for any of the three reasons raised by defendant (appellant) the plaintiff (appellee) shall not recover.' "

The provision of the Constitution of 1901 that is invoked, Article XII, Section 221, reads as follows: "The legislature shall not enact any law which will permit any person, firm, corporation, or association to pay a privilege, license, or other tax to the State of Alabama, and relieve him or it from the payment of all other privilege and license taxes in the state."·

Of this constitutional provision, it has been observed by this Court that: "The Legislature had not been unaccustomed to pass acts which required of those who desired to carry on a particular character of business in the state for which a license tax might be lawfully required to pay a license tax for the State only and in which the State only participated. Cities and towns were thus frequently left without power to derive any revenue in the shape of license taxes from those to whom they were constantly furnishing municipal protection." Ex parte Bozeman, 183 Ala. 91, 63 So. 201, 202.

And again Mr. Justice Sayre speaking for this court said: "In the constitutional convention of 1901 there was differences of opinion as to the meaning of section 221. But the historical background of the section is plain enough. It is correctly stated by Judge Mayfield in Birmingham v. Southern Express Co., 164 Ala. 529, 51 So. 159, and again in his dissenting opinion in Ex parte Bozeman, 183 Ala. [91], 114, 115, 63 So. 201, and need not to be repeated." Exchange Drug Co. v. State Tax Commission et al., 218 Ala. 115, 117 So. 673, 676.

The rule of statutory construction touching the constitutionality of an act has been stated and the authorities cited in Jefferson County v. Busby, 226 Ala. 293, 148 So. 411, and it is not necessary to repeat the same here.

Under our system of jurisprudence constitutional rights stand above all other rules of law that may be adopted. Rochell v. City ·of Florence, 237 Ala. 635, 188 So. 247. It has been observed that courts will not ·inquire into the motives which may have induced legislative action (Birmingham Electric Co. v. Allen, 217 Ala. 607, 117 So. 199), other than to ascertain the legislative intent in the enactment for construction.

The further observation is contained in City of Montgomery et al. v. Orpheum Taxi Co., 203 Ala. 103, 82 So. 117, 121, that: "Where there is an express legislative grant to a municipality of· power to ordain to a particular effect or to do a particular thing, the municipal ordinance expressive of that power cannot be· inquired into with respect to its policy or reasonableness. * * *"

It is further declared that it is the legislative prerogative to define and confer upon its municipalities the power of self-government within constitutional limitations. Standard Oil Co. of Kentucky v. Limestone County, 220 Ala. 231, 124 So. 523.

The subject of due classification. in legislative acts dealing with individuals, corporations, business, or articles handled therein contained in taxing statutes and ordinances has been of frequent consideration by this court. This is illustrated by leading cases as follows: Exchange Drug Co. v. State Tax Commission, 218 Ala. 115, 117 So. 673; Exchange Drug Co. v. McNeel, 278 U.S. 577, 49 S.Ct. 176, 73 L.Ed. 515; 62 A.L.R. 106; Town of Guntersville v. Wright, 223 Ala. 349, 135 So. 634; Lee v. State Tax Commission, 219

Ala. 513, 123 So. 6; Phoenix Carpet Co. v. State, 118 Ala. 143, 22 So. 627, 72 Am. St.Rep. 143; Wages v. State, 225 Ala. 2, 141 So. 707; Rochell v. City of Florence, 237 Ala. 635, 188 So. 247.

The rule of classification of such statutes requires a definite statement ·of exemptions and impositions of taxes, property and excise, under the taxing and police power of government. The subject of exemption from taxation under the rule of equality and uniformity was declared in Lee v. State Tax Commission, supra, and need not be repeated here.

The insistences of the City of Birmingham in a word are (1) an exemption from municipal license taxation accorded fire insurance companies writing industrial insurance, by the last sentence of Schedule 160.17 of Section 348 of the General Revenue Act of Alabama of 1935, violates Section 221 of the Constitution of Alabama of 1901; and (2) a provision in a tax statute which is not in accord to and within the terms of such rule is void. Standard Oil Co. v. State, 178 Ala. 400, 59 So. 667; State v. Goldstein, 18 Ala.App. 587, 93 So. 308; State ex rel. Highsmith v. Brown Service Funeral Co., 236 Ala. 249, 182 So. 18; 31 Corpus Juris, 966.

The schedule challenged by the appeal is as follows: "Schedule 160.17. No fire insurance company doing business in any municipality in this State having a population of less than 100,000, according to the last preceding Federal Census, shall be required to *pay to such municipality for any license or license tax*, a sum greater than four per centum of its gross premiums, less return premiums, received by such company on risks in such municipality, including any sum, or sums, required to be paid or contributed by such insurance company to any Firemen's Compensation, or Relief Fund in such municipality. Provided that no license or privilege tax, or other charge for the privilege of doing business *shall be imposed by any municipal corporation on any fire insurance company writing industrial insurance.*" [Italics supplied.]

It will be observed as to this that appellant's counsel says: "The license tax of one and one-half per cent levied upon fire insurance companies doing business in the City of Birmingham by Section 11 of the Firemen's Pension and Relief Fund Act, approved September 9, 1935 (p. 852), applies to fire insurance companies writing industrial insurance. General Acts of Alabama of 1935, p. 852 (855); Cobb's v. Home Ins. Co., 18 Ala.App. 206, 91 So. 627; General Acts of Alabama of 1919, p. 415 (Schedule 59); General Acts of 1927, p. 226 (Section 9)." [Parenthesis supplied.]

The provision thus adverted to by counsel is: "Section 11. * * * C. That each fire insurance company, whether a mutual company or otherwise, qualified to do business under the laws of Alabama, and doing business in such city, shall annually and on or before the first day of March of each year hereafter, pay into said Firemen's Pension and Relief Fund, a sum equal to one and one-half per centum of the gross premiums, less returned premiums, received by such fire insurance company for and on account of business, including all renewals of fire insurance, done by it in such city, during the preceding year; and it shall not be lawful for such fire insurance company or its agent,· to take or receive any premium for insurance against fire within such city, unless such fire insurance company shall pay, at the time aforesaid, to the said Firemen's Pension and Relief Fund, the amount herein provided to be paid by such fire insurance company * * *. D. * * * All sums, except the penalties payable to the State of Alabama, as hereinabove provided, collected under the provisions of this Subsection shall be payable to the Treasurer of the Firemen's Pension and Relief Fund of the City in which said property is situated, and shall be disbursed and used for the same purposes and under the same conditions as is provided by this Act. E. The Board of City Commissioners or other governing body of such City, is hereby authorized, and empowered to set apart for, and pay into, the said Firemen's Pension and Relief Fund, not exceeding one per centum of all revenues collected and received by such city from licenses issued by such city. Provided, however, that the said sum equal to one and one-half per centum of gross premiums, less return premiums, required by paragraph (c) of this Section 11 to be paid by Fire Insurance Companies into said Firemen's Pension and Relief Fund shall *be treated and held to be a part of the maximum of four per cent. (4%) on each One Hundred Dollars, or major fraction thereof, of gross premiums, less return premiums,* which any municipal corporation may

198

by law impose upon any Fire Insurance Company in any one year as a license or privilege tax for the privilege of doing business in such municipality during such year under Schedule 160.10 of Section 348, Chapter 8 Article 13 of the General Revenue Act of 1935 approved July 10th, 1935." [Italics supplied.]

It will be observed that the excise tax or contributions in the nature thereof required by the act touching the Firemen's Pension and Relief Fund was for the aid of members of the municipal fire department of the municipality and was not for the department of revenue of the State of Alabama. Gen.Acts 1935, p. 852. The exemption contained in Schedule 160.17 (Gen.Acts 1935, p. 555) is set out in the Act Approved July 10, 1935, and is directed to any license or license tax required to be paid to a municipality within the class dealt with. The imposition of the annual payment of a sum equal to one-half of one per centum of the gross premiums less return premiums received by such fire insurance company on business done by it within the city during the preceding year is contained in the act approved September 9, 1935: and this is the last expression of the legislative will on the subject of an imposition of a tax in the nature of a license or privilege tax that may be imposed by a municipal corporation on fire insurance companies *writing industrial business*. It is readily seen that not only was this last expression of the legislative will on the subject as to the class of insurance or insurance companies dealt with, but that the subject was a municipal license or tax in both statutes, as we have indicated, and not that of the exaction of a "privilege license or other tax to be paid *to the State of Alabama and when so paid relieve from the payment of all other privilege or license taxes in the state*." [Italics supplied.] The effect of the proviso was dealt with in Home Insurance Co. v. City of Birmingham, 236 Ala. 41, 180 So. 783, 785, where it is observed that its language "leaves no room for the contention that it does not apply to all municipal corporations, including such as have more than 100,000 population."

Adverting to the General Revenue Act of July 10, 1935, Gen.Acts 1935, pp. 552, 553, it will be noted that Schedule 160.10, § 348, reads as follows: "No license or privilege tax or other charge for the privilege of doing business shall be imposed by any municipal corporation upon any fire or marine insurance company doing business in such municipality, except upon a percentage of each one hundred dollars ($100.00) of gross premiums, less return premiums, on policies issued during the preceding year on property located in such municipality. Such percentage shall not exceed four per cent (4%) on each one hundred dollars or major fraction thereof, of such gross premiums; and no credit or deduction of any kind shall be allowed or made on account of the cost of reinsurance by such company in a company not authorized to do business in this State. Any municipality may charge a flat minimum license at the beginning of each year for new companies doing business therein, on which there shall be an adjustment at the expiration of such year upon such percentage as may be fixed by said municipality, but such percentage shall not exceed four per cent (4%). Such percentage shall not exceed four per cent (4%) of the gross premiums, less return premiums, collected by such companies on policies issued during the preceding year in such municipality. Provided, however, that no license or privilege tax shall be charged any insurance company by or on behalf of any county."

Hence Schedule 160.17, Gen.Acts 1935, p. 555, will be construed in pari materia with the antecedent Schedule 160.-10, set out above.

It is urged that subsection C. of Section 11 of the Acts of 1935 (Gen.Acts 1935, pp. 852, 855, dated September 9, 1935), requires that all fire insurance companies qualified to do business (whether mutual companies or otherwise) shall pay a sum equal to one and one-half per cent into the Firemen's Pension and Relief Fund on the gross premiums indicated, and the amount to be paid by any fire insurance company (whether a mutual company or otherwise) should not exceed four per centum on each one hundred dollars or major fraction thereof of gross premiums, etc., and that the one and one-half per centum required to be paid into the said Firemen's Pension and Relief Fund of the municipality shall be treated and held to be a part of the maximum four per centum limit of municipal (p. 855, Acts 1935) license tax provided in Schedule 160.10 of Section 348 of the General Revenue Act. General Acts of Alabama, 1935, pp. 256, 441, 552.

Such are salient provisions of the act providing for the Firemen's Pension & Relief Fund, passed after the General Revenue Act, which is dated July 10, 1935.

A due consideration of the Gen.Acts of 1915, p. 898, as amended by the Gen.Acts of 1919, p. 111, indicates the levies by the legislature for the benefit of municipalities within the class and within the municipal ordinance and within the amount fixed by the general statute. General Revenue Act 1919, p. 414, § 361, Schedule 59. When these several statutes are considered as a part of a comprehensive taxing system, there is no doubt of the legislative intent. Cobbs v. Home Ins. Co., 18 Ala.App. 206, 209, 91 So. 627; Home Ins. Co. v. City of Birmingham, 28 Ala.App. 143, 180 So. 781; Id., 236 Ala. 41, 180 So. 783.

The policy of the state for many years, as disclosed by the Gen.Acts of 1915, p. 898, and of 1919, p. 415, Schedule 59, Section 361, providing for a privilege or license tax, and that of the Firemen's Pension Act (Gen.Acts 1915, p. 902, § 8) has been to provide for and to limit the total amount of municipal license tax to a maximum of four per cent. In order to preserve this policy that had obtained for a fifth of a century, it was necessary to insert Section 11 of the 1935 Firemen's Pension and Relief Fund Act, Gen.Acts 1935, p. 852, into the provisions of the last sentence to the effect that the tax levied by the legislature of one and one-half per cent should be considered as a part of the total four per cent to which cities had been limited by Schedule 160.10 of Section 348 of the Gen.Rev.Act of 1935, pp. 552, 553. No such provision was necessary in the 1919 act for the reason that the limitation of four per cent was adopted subsequent to the levy made in the 1915 act and controlled. The converse is true or applicable to the Act of 1935 (Gen.Acts 1935, pp. 552, 553, approved July 10, 1935).

It results that in determining the maximum tax which a municipality may collect from such fire insurance companies, there is included the one and one-half per cent tax levied by the Legislature for the Firemen's Pension and Relief Fund, and the additional amount which the city levies, as it is authorized to do under Schedule 160.10, and that both levies may not exceed four per cent on such gross premiums. The right to such credit has no bearing on the question of what companies are within the terms of the levying clause of Section 11 of the Firemen's Pension and Relief Fund Act, p. 852. "Each fire insurance company, whether a mutual company or otherwise," is required to pay the amount of one and one-half per cent into the Firemen's Pension and Relief Fund for the purpose of the trust fund defined by the act, and not for the benefit of the municipal treasury.

When the legislative intent of all the acts touching the subject dealt with in the proviso in question (Schedule 160.17) is considered, the following pertinent provisions will be noted: (1) The exaction by the state is the sum of $200 as a filing fee provided in Schedule 160.2, p. 549, Gen. Acts 1935; in addition thereto, the schedule based on gross premiums "received by it or them for doing business in this State, whether the same are actually received by said company in this State or elsewhere," etc., is provided in. Schedule 160.4, p. 550, Gen.Acts 1935; (2) no license or privilege tax shall be charged any such insurance company by or on behalf of any county (Schedule 160.11, p. 553 and Schedule 160.18½, p. 556, Gen.Acts 1935); (3) in addition to the amount paid the state, the several cities and towns are permitted to levy as a privilege tax from every insurance company for the privilege of doing business within the limits, such tax allowed to be levied by the several cities being upon the regular as distinguished from the industrial fire insurance business so done in such cities; which tax is computed and based on the population of the city and town in the sum indicated and not to exceed the scale set out (Schedule 160.11, p. 553, Gen.Acts 1935); (4) the municipal license or privilege tax shall not exceed four per centum of the gross premiums less return premiums collected by such companies on policies issued during the preceding year in such municipalities, no such tax being permitted to be levied on behalf of any county, Schedule 160.10, pp. 552 and 553, Gen.Acts 1935; (5) the Firemen's Pension and Relief Fund of one and one-half per centum of gross premiums is held to be a part of the maximum four per centum that a city may charge such insurance companies for doing business therein (Gen.Acts 1935, § 11, p. 855); and (6) the provision as to the four per centum gross premium municipal levy is contained in the later act and adopts Schedule 160.10, p. 552 of the Gen.Rev.Act of 1935 and by this reference the later act recognizes the expressed inhibition against the levy

by a county of a license or privilege tax to "be charged any insurance company", Gen.Acts 1935, pp. 852, 855, § 11.

When the several schedules of the Revenue Law of 1935 are considered in pari materia, it is apparent that the license tax imposed for the benefit of the state under Schedule 160.4, p. 550, Gen.Acts 1935, is on gross premiums received by fire insurance companies on business done in the state (of the class indicated) and relieved no companies. When the proviso of Section 160.17, Gen.Acts 1935, p. 555, is considered, it is apparent that such *companies writing industrial fire insurance* are relieved from the payment of all privilege or license taxes on gross premiums resulting from the writing of such industrial fire insurance within the municipalities.

Section 350 (a), (b) p. 558, Gen.Acts 1935, provides for a license or privilege tax of fifty per centum to be paid to the counties on business on which the state imposes a license or privilege tax except as otherwise provided in the Revenue Act, Gen. Acts 1935, p. 256.

We have indicated how it is provided in the revenue law that municipalities shall not impose the tax in question, Schedule 160.17, p. 555, Gen.Acts 1935, and that the county shall not impose a like tax, Schedule 160.11 and 160.18½, pp. 552, 553, 556, Gen.Acts 1935, on the premiums accrued for writing industrial fire insurance. Thus *both the municipality and the county are denied the right to levy* such license or excise tax, while the state has authority to levy the same. Schedule 160.4, p. 550, Gen.Acts 1935.

Under Exchange Drug Co. v. Tax Commission, 218 Ala. 115, 117 So. 673, 676; Exchange Drug Co. v. McNeel, 278 U.S. 577, 49 S.Ct. 176, 73 L.Ed. 515, Section 221 of the Constitution is applied to counties and municipalities in the following way: That if the legislature would levy a tax for the state, "it must permit either counties *or* municipalities to levy a license tax on the same occupation. It cannot deny the right to both of them." (Italics supplied.)

When the provision denying municipalities the right to levy a tax "on any fire insurance company *writing industrial insurance*" Schedule 160.17, p. 555 (italics supplied), and the provision that "no license or privilege tax shall be charged any insurance company by or on behalf of any county", Schedule 160.18½, p. 556, are considered, it is apparent that the proviso, Schedule 160.17, p. 555, may be rejected or materially aided by interpretation without impairing the integrity of the General Revenue Act of 1935, Gen.Acts 1935, p. 256, for the reasons now to be stated.

■ The established rule of construction is that if statutes are susceptible of two interpretations, that which upholds, rather than that which defeats, constitutionality is to be adopted. Henry v. McCormack Bros. Motor Car Co., 232 Ala. 196, 167 So. 256; Jefferson County v. Busby, 226 Ala. 293, 148 So. 411.

The applicability of this reasonable rule of construction to the specific terms of the revenue statute in question is emphasized by the fact that nowhere in the act is there an attempt to levy a *county license for the privilege of conducting any insurance business*. On the other hand, the body of the act authorizes *municipalities to levy* and collect a license tax on gross premiums received from fire insurance companies. This right is sought to be limited by the equivocal proviso as to companies *"writing industrial fire insurance."* Umble v. State, 207 Ala. 508, 93 So. 531; 59 C.J. p. 1088 et seq. This class of fire insurance companies (if the proviso is applied to all the business) is given the rights, privileges, protection and regulation of other fire insurance companies and yet the statute contains the ambiguous provision as to "any fire insurance company writing industrial insurance." What, then, is the reasonable interpretation of this proviso when strictly construed and applied to a company writing both industrial and regular fire insurance business?

■ The original act has been examined and is as it appears in the published acts. It is insisted that Schedule 160.17 is of doubtful meaning as to its extent— whether it is an exemption that applies (1) *to all business done* by an insurance company writing regular and industrial business, or (2) *only to the gross premiums which accrue on the industrial fire insurance* written by said companies. If this proviso is eliminated, for this uncertainty in extent of its application, the result is that the license or privilege tax levied on behalf of the state and permitted to be levied by municipalities, would not conflict with any provision of the Constitution. If it be held to apply to all gross premiums

that accrue on the regular and industrial policies of such companies, the classification would be arbitrary as to the regular insurance written. If it be held to apply to, and the levy is denied on, the gross premiums accruing from the writing of industrial policies, the classification is recognized as well founded and the gross premiums are separable. State ex rel. Highsmith v. Brown Service Funeral Co., 236 Ala. 249, 182 So. 18. The Court of Appeals held to this view, and the writ is denied.

Petition for writ of certiorari denied.

All the Justices concur, except BROWN, J., who dissents.

## On Rehearing.

THOMAS, Justice.

The general revenue bill was approved July 10, 1935, containing Schedule 160.17 and the proviso in question. Gen.Acts 1935, p. 555, § 348, Schedule 160.17. The last expression of the legislative will as to the Firemen's Pension and Relief Fund is contained in the Act approved September 9, 1935, p. 847, and includes the significant provision that each fire insurance company, whether a mutual company *or otherwise,* qualified to do business under the laws of the State of Alabama, and doing business in such city, shall annually on or before the first day of·March of each year pay into the Firemen's Pension and Relief Fund a sum equal to one-half of one per centum of the gross premiums less return premiums received by such fire insurance company for and on account of business, including all renewals of fire insurance done by it in such city during the preceding year, and it is made unlawful for such fire insurance company or its agents to receive any premium for insurance against fire within the city "unless such fire insurance company shall pay at the time aforesaid to the Firemen's Pension and Relief Fund the amount herein provided.to be paid by such fire insurance company."

■ It cannot be said, then, that the provisions of Schedule 160.17 of the Revenue Act of 1935, supra, and the proviso therein contained (here under consideration), were not modified by the subsequent act of Sept. '9, 1935, and that the construction given on the former hearing was of effect to relieve industrial companies writing in part or exclusively industrial insurance from the payment of the amounts required to be paid into the Firemen's Pension and Relief Fund. In other words, the proviso in question, as a part of the context of Schedule 160.17, supra, must be held to apply to excise tax, and not to the amount to be paid into the Firemen's Pension and Relief Fund.

■ We should say further that the proviso in question does not relieve industrial companies or those writing industrial insurance from the duty to procure a certificate and license for such agents or representatives, or of the payment of the fee indicated in Schedule 160.14, p. 554, Gen. Acts 1935; or from the payment to the superintendent of insurance of the sum of two-fifths of one per cent of gross premiums less return premiums, for the purpose of maintaining the office of state fire marshal, as required in Schedule 160.17, p. 555 of the Revenue Law, supra.

These are not "license taxes" in the sense dealt with in Schedule 160.17, supra, but are fees imposed on the writing of all fire insurance in the state (including industrial insurance) and are not imposed by the municipality, but by legislative enactments contained in the revenue law, and by the subsequent act providing for the Firemen's Pension and Relief Fund for "regularly organized and paid fire departments" of cities which have a population of as much as two thousand, according to the last Federal Census.

The result is that, in our opinion, this industrial fire insurance plaintiff in the trial court is not entitled to receive the amount paid into the Firemen's Pension and Relief Fund of Birmingham, under the Act of September 9, 1935, p. 847, and to that extent.we cannot concur in the opinion of the Court of Appeals. And for that reason, the application for rehearing is granted. The judgment of the Court of Appeals is reversed and the cause remanded to that court so that the judgment of the trial court may be modified pursuant to this holding.

Opinion extended, application for rehearing granted, writ awarded, reversed and remanded.

All the Justices concur in this result.